IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BLUEFIELD DIVISION

| | |
|---|---|
| BLAKE SANDLAIN, | ) |
| | ) |
| Petitioner, | ) |
| v. | ) Civil Action No. 1:19-00229 |
| | ) |
| FCI MCDOWELL WARDEN, | ) |
| | ) |
| Respondent. | ) |

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court is Petitioner's Application to Proceed Without Prepayment of Fees and Costs and Motion for Writ of Mandamus. (Document Nos. 1 and 2.) By Standing Order, this matter was referred to the undersigned United States Magistrate Judge for submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No. 3.) Having examined Petitioner's Motions, the undersigned finds and hereby respectfully recommends that Petitioner's Motions should be denied.

## FACT AND PROCEDURE

On March 25, 2019, Petitioner, acting *pro se*,[1] filed his Application to Proceed Without Prepayment of Fees and a "Motion for Writ of Mandamus" pursuant to 28 U.S.C. § 1361. (Document Nos. 1 and 2.) In his "Motion for Writ of Mandamus," Petitioner explains that his Unit Team at FCI McDowell are incorrectly calculating his custody points, which is resulting in a higher security classification. (Document No. 2, pp. 2 – 3.) Petitioner argues that the "BOP team here at FCI McDowell has [non]-discretionary responsibility when calculating custody point for custody

---

[1] Because Petitioner is acting *pro se*, the documents which he has filed are held to a less stringent standard than if they were prepared by a lawyer and therefore construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

sheets to calculate them consistent with Policy Statement 5100.08." (Id.) Petitioner states that Program Statement ["P.S."] 5100.08 "states in order to calculate the score for security custody points, the calculation is derived from the United States Sentencing Guidelines." (Id.) Petitioner argues that U.S.S.G. § 4A1.2(e) provides that "any predicate offense that were commenced outside fifteen years of the instant offense, cannot be used for calculation for security custody points." (Id.) Petitioner notes that his Presentence Investigation Report ["PSR"] contains predicate offenses occurring in 1985 and 1987. (Id.) Petitioner argues that his Unit Team is improper considering his 1985 and 1987 offenses when determining his security classification. (Id.) Therefore, Petitioner requests that this Court direct BOP staff to correct his security classification. (Id.)

As Exhibits, Petitioner attaches the following: (1) A copy of Program Statement 58100.08 (Document No. 2-1.); (2) A copy of a pertinent section of U.S.S.G. § 4B1.2 (Id., p. 2.); (2) A copy of a BOP policy regarding "Legal Research and Preparation of Legal Documents" (Id., p. 3.); (4) A copy of Petitioner's "Documentation of Informal Resolution Attempt" dated December 1, 2017 (Id., pp. 4 - 5.); (5) A copy of Petitioner's "Custody Classification Form" (Id., p. 6.); (6) A copy of the Warden of FCC Pollock, Calvin Johnson's "Response to Request for Administrative Remedy" dated January 24, 2018 (Id., p. 7.); (7) A copy of Petitioner's "Request for Administrative Remedy" as filed during his incarceration at USP Pollock on December 4, 2017 (Id., pp. 8 - 11.); and (8) A copy of a "Operations Memorandum" dated March 15, 1993, concerning "Maintenance of Inmate Files" (Id., pp. 11 – 12.).

## **ANALYSIS**

Title 28 U.S.C. § 1361 provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any

agency thereof to perform a duty owed to the plaintiff." 18 U.S.C. § 1361. The remedy of mandamus, however, "is a drastic one, to be invoked only in extraordinary circumstances." Kerr v. United States District Court, 426 U.S. 394, 402, 96 S.Ct. 2119, 48 L.Ed.2d 725 (1976); also see United States v. Moussaoui, 333 F.3d 509, 516-17 (4th Cir. 2003). Mandamus relief is only available when three elements coexist: "(1) the petitioner has shown a clear right to the relief sought; (2) the respondent has a clear duty to do the particular act requested by the petitioner; and (3) no other adequate remedy is available." Gant v. FBI, 992 F.Supp. 846 (S.D.W.Va. Feb. 12, 1998)(J. Haden)(citing In re First Federal Savings & Loan Ass'n, 860 F.2d 135, 138 (4th Cir. 1988)); In re Beard, 811 F.2d 818, 826 (4th Cir. 1987)(internal quotations omitted)("The party seeking mandamus relief carries the heavy burden of showing that he has no other adequate means to attain the relief he desires and that his right to such relief is clear and indisputable."). Furthermore, mandamus will only be issued in cases where "the alleged duty to act involves a mandatory or ministerial obligation which is so plainly prescribed as to be free of doubt." In re First Federal Savings & Loan Ass'n, 860 F.2d at 138; also see Central South Carolina Chapter, Soc. of Professional Journalists, Sigma Delta Chi v. United States District Court for the District of South Carolina, 551 F.2d 559, 562 (4th Cir. 1977)(A writ of mandamus "will issue only where the duty to be performed is ministerial and the obligation to act peremptory and plainly defined. The law must not only authorize the demanded action, but require it; the duty must be clear and indisputable.").

In the instant case, Petitioner is requesting an order compelling BOP staff to correct alleged errors in the calculation of his security classification. Neither Section 3621(b) nor the BOP's Program Statement (P.S. 5100.08) contain explicit mandatory language or standards limiting the

3

BOP's discretion, which may have given rise to an inmate's right to a particular security classification. Title 18, U.S.C. § 3621(b) clearly vests the BOP with broad discretionary authority as to prisoners' placement and classification while incarcerated. 18 U.S.C. § 3621. The language of this statute which provides that the "Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability . . . that the Bureau determines to be appropriate and suitable," is clearly permissive; the statute does not *mandate* that the BOP place a prisoner in a certain facility.[2] Additionally, P.S. 5100.08 allows the BOP to use its "professional judgment" in deciding an inmate's classification. Specifically, P.S. 5100.08[3] states as follows:

> It should be clearly understood that the Custody Classification Form only recommends an inmate's custody. The Unit Team and/or Warden is the final review authority. The intent of the Custody Classification system is to permit staff to use professional judgment within specific guidelines.

P.S. 5100.08, Chapter 6, p. 1. Thus, the "classification and transfer of inmates among authorized institutions is peculiarly an administrative function fully within the discretion given to prison officials." O'Bar v. Pinion, 953 F.2d 74, 84 (4th Cir. 1991); also see Bell v. Wolfish, 441 U.S. 520,

---

[2] Title 18 U.S.C. § 3621 provides that the BOP may consider the following in determining placement of prisoners:
    (1) the resources of the facility contemplated;
    (2) the nature and circumstances of the offense;
    (3) the history and characteristics of the prisoner;
    (4) any statement by the court state imposed the sentence - -
        (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
        (B) recommending a type of penal or correctional facility as appropriate; and
    (5) any pertinent policy statement issued by the Sentencing Commission pursuant to 994(a)(2) of Title 28.

[3] P.S. 5100.08 sets forth the BOP's policies and procedures for the inmate classification system. P.S. 5100.08 provides that "classification of inmates is necessary to place each inmate in the most appropriate security level institution that also meets their program needs and is consistent with the Bureau's mission to protect society."

99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)(stating that "[p]rison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security").[4] As stated above, "[a] writ of mandamus will not issue to compel an act involving the exercise of judgment and discretion." See Central South Carolina Chapter, Soc. of Professional Journalists, Sigma Delta Chi, 551 F.2d at 562("A writ of mandamus will not issue to compel an act involving the exercise of judgment and discretion.").

Next, federal prisoners have no constitutional or inherent right to receive a particular security or custody classification. See Moody v. Daggett, 429 U.S. 78, 88, n. 9, 97 S.Ct. 274, 279, n. 9, 50 L.Ed.2d 236 (1976)("[N]o due process protections were required upon the discretionary transfer of state prisoners to a substantially less agreeable prison, even where that transfer visited a 'grievous loss' upon the inmate. The same is true of prisoner classification and eligibility for rehabilitative programs in the federal system. Congress has given federal prison officials full discretion to control these conditions of confinement, 18 U.S.C. § 4081, and petitioner has no legitimate statutory or constitutional entitlement to invoke due process."). The Fourth Circuit has specifically stated that "[t]he federal constitution itself vests no liberty interest in inmates retaining or receiving any particular security or custody status '[a]s long as the [challenged] conditions or degree of confinement . . . is within the sentence imposed . . .   And is not otherwise violative of

---

[4] Petitioner appears to allege that the BOP erred in determining the number of points attributed under his Criminal History Score, which resulted in his higher security classification. P.S. 5100.08, however, provides that the BOP is allowed to use its "professional judgment" in deciding custody classification and "[c]ustody changes are not dictated solely by the point total." P.S. 5100.08, Chapter 6, pp. 1 - 2. Thus, Petitioner is merely speculating that his security level would be reduced if points were removed from his Criminal History Score.

the Constitution." Slezak v. Evatt, 21 F.3d 590, 594 (4th Cir. 1994), cert. denied, 513 U.S. 889, 115 S.Ct. 235, 130 L.Ed.2d 158 (1994); see also Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995)(finding that "a prison inmate does not have a protectable liberty or property interest in his custodial classification and an inmate's disagreement with a classification is insufficient to establish a constitutional violation"); Posey v. Dewalt, 86 F. Supp.2d 565, 571 (E.D.Va. 1999), appeal dismissed by, 215 F.3d 1320 (4th Cir. 2000), cert. denied, 531 U.S. 971, 121 S.Ct. 411, 148 L.Ed. 318 (2000)(stating that "[p]ut simply, petitioner has not stated a due process claim because he has no protected liberty interest in a particular classification within BOP"). ). As stated above, mandamus relief is only available when "the petitioner has shown a clear right to the relief sought." Petitioner has failed to do so in the instant case.

Finally, Petitioner has alternative means to challenge his security classification. A Section 2241 petition is used to attack the manner in which a sentence is executed, e.g., time credit calculations. Thus, a Section 2241 petition is appropriate where the prisoner challenges the fact or length of his confinement, but generally not the conditions of that confinement. See Preiser v. Rodriguez, 411 U.S. 475, 499-500 (1973); Ajaj v. Smith, 108 Fed.Appx. 743, 744 (4th Cir. 2004). "If a prisoner seeks a 'quantum change' in his level of custody such as freedom, his remedy is habeas corpus." Campbell v. Deboo, 2011 WL 1694454, * 2 (N.D.W.Va. May 4, 2011). If a prisoner, however, "seeks a different program, location, or environment, his challenge is to the condition of his confinement rather than the fact of his confinement and his remedy is under civil rights law." Id.; also see Biedrzycki v. O'Brien, 2011 WL 6748505 (N.D.W.Va. Oct. 14, 2011)(dismissing petitioner's Section 2241 claim where petitioner was "merely challenging the B.O.P.'s reliance on information in his PSR that was used to determine his custody classification

6

and security level, neither of which affect the duration of his sentence"). If a prisoner complains that the erroneous classification has had adverse effects upon the conditions of his confinement, the prisoner should file a Bivens action.[5] As stated above, mandamus relief is only available when "no other adequate remedy is available" and Petitioner cannot establish such in the instant action. Accordingly, the undersigned finds that Petitioner has failed to meet the stringent requirements for invoking a Writ of Mandamus.

Notwithstanding the foregoing, the undersigned will briefly consider the merits of Petitioner's claim. Relying upon P.S. 5100.08's definition of Criminal History Points and Chapter 4 of the Sentencing Guidelines, Petitioner argues that BOP staff are incorrectly calculating his security classification. Citing U.S.S.G. § 4A1.2(e), Petitioner argues that that his predicate offenses occurring in 1985 and 1987 should not now be considered by the BOP in the determination of his Criminal History Points. P.S. 5100.08, however, defines Criminal History Points as follows:

> Criminal History Points are used to calculate the Bureau's Criminal History Score. The Criminal History Points is the calculation, as specified by the U.S. Sentencing Commission Guidelines (Guidelines Manual, Chapter 4), which assigns a numerical value based on the individual's entire criminal record of convictions. Ordinarily, the Criminal History Points are calculated by the United States Probation Office.

P.S. 5100.08, Chapter 2, p. 1. P.S. 5100.08 further provides that the Criminal History Score is "derived from the U.S. Sentencing Guidelines Criminal History Points, as reflected in the final judgment and the SOR. If not found in either the Judgment or SOR, use the points assessed by the [United States Probation Officer] in the PSR." Id., Chapter 4, p. 8. Petitioner does not dispute that his PSR, at the time of his conviction, correctly calculated his Criminal History Points. Petitioner

---

[5] Petitioner has three other actions pending before this Court: (1) *Sandlain v. Rickard*, 1:19-cv-00025 (Section 2241 Petition); (2) *Sandlain v. Rickard*, 1:19-cv-00072 (Section 2241 Petition); and (3) *Sandlain v. Rickard*, 1:19-cv-00125 (*Bivens* action).

argues that pursuant to U.S.S.G. § 4A1.2(e), his predicate offenses occurring in 1985 and 1987 should not *now* be considered in the determination of his Criminal History Points by the BOP. Although Petitioner's argument is creative, the undersigned finds that Petitioner's argument is incorrect. Petitioner cannot now challenge the validity of his Criminal History Points as contained his PSR based upon U.S.S.G. § 4A1.2(e). U.S.S.G. § 4A1.2(e) was properly applied to the calculation and determination of Petitioner's Criminal History Points at the time of his conviction. Thus, the BOP is correctly obtaining Petitioner's Criminal History Points from his PSR as set forth in P.S. 5100.08. The undersigned further notes that an inmate's Criminal History Points contained in his Criminal Judgment Order or PSR is only one factor considered by the BOP. The BOP considers multiple factors when determining an inmate's custody classification, such as relevant factual information regarding the inmate's current offense, sentence, criminal history, and institutional behavior. Following an inmate's initial classification, subsequently reviews occur at least every 12 months at a scheduled program review. Thus, BOP staff are not violating BOP policy by obtaining Petitioner's Criminal History Points from Petitioner's PSR. Based upon the foregoing, the undersigned respectfully recommends that Petitioner's Petition for Writ of Mandamus be denied.

## **PROPOSAL AND RECOMMENDATION**

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **DENY** Petitioner's Application to Proceed Without Prepayment of Fees and Costs (Document No. 1), **DENY** Petitioner's Motion for Writ of Mandamus (Document No. 2), and **REMOVE** this matter from the Court's docket.

The Petitioner is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Proposed Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208, 104 S. Ct. 2395, 81 L. Ed. 2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Faber, and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Petitioner, who is acting *pro se*.

ENTER: September 6, 2019.

Omar J. Aboulhosn
United States Magistrate Judge